

# THE ATTORNEY GENERAL

## OF TEXAS

GROVER SELLERS  
~~XXXXXXXXXXXXXXXXXX~~  
ATTORNEY GENERAL

AUSTIN 11, TEXAS

Overruled by V-165

Secretary of State  
Austin, Texas

Attention:  Mr. Horace B. Sessions,  
Securities Commissioner

Dear Sir:

Opinion No. 0-6311

Re:  The Texas Securities  
Act is applicable to  
an employees retire-  
ment plan sponsored  
by a private corp-  
oration.

We have received your recent request for an opinion, and quote same as follows:

"We have recently received a request for an opinion concerning the applicability of the Texas Securities Act to the solicitation of contributions in an employees retirement plan.

"The essential provisions of the retirement plan are:

"(1) Eligibility of all employees with five or more years of service with the corporation to come under the Plan.

"(2) Participation in the Plan optional with the employees, and to be evidenced by an enrollment form agreeing to the provisions of the Plan, author- izing salary deductions and naming a beneficiary.

"(3) Normal retirement at age 65, with earlier retirement optional in certain instances.

"(4) Employees' contribution should be 2% of salary up to $3,000, and 4% of salary in excess of $3,000.

"(5) Employee's deposit to be returned with 2% interest in any event.

"(6) Past service benefits for years prior to institution of Plan in excess of five, and current service benefits after institution of Plan, both to be paid in accordance with formula set forth under the Plan.

"(7) Action as to the manner of receiving the retirement income provided from past and current service benefits, in accordance with provisions of the Plan.

"(8) Administration of the Plan by a Retirement Plan Committee appointed by Board of Directors.

"(9) Guarantee by employer to contribute sufficient funds to return employees' deposits with 2% interest compounded annually, but no guarantee by employer corporation in excess of such amount.

"(10) Modification or termination of the Plan at will of corporation, except as to provision for repayment of the employees' contributions plus 2% interest compounded annually.

"The essential provisions of the Trust Agreement under which the funds deposited under the Plan are to be administered are:

"(1) Deposit with the Trustee at the direction of the Retirement Plan Committee of the funds deposited by the employees and the employer corporation.

"(2) Payments of the funds of the Plan to beneficiaries thereunder at the direction of the Retirement Plan Committee.

"(3) Investment of the trust funds by the Trustee in securities which are at the time legal investments for life insurance companies under the laws of the State of New York, except as otherwise directed by the Board of Directors of the corporation.

"(4) Modification of the Trust Agreement in accordance with the provisions of the Retirement Plan at the will of the employer corporation.

"(5) Report by the Trustee to the corporation annually covering its investments, receipts and disbursements of the trust fund.

"We have been unable to find any Texas cases or an opinion of the Attorney General which would assist us in determining whether or not securities issued under such plan might be exempt under one of the specific exemptions contained in Sections 3 and twenty three of the Texas Securities Act. It does not appear that any of the specific exemptions contemplated an organization of this character, and since it appears that there will be a number of plans of a similar nature organized and operated in Texas, we should appreciate an opinion from you concerning whether contributions to such a plan would require registration or whether such securities might be exempt from the necessity of registration under one of the exemptions provided by Section 3 and 23 of the Act.

"We enclose herewith a copy of the proposed retirement plan and trust agreement under which the funds of the plan will be administered for your consideration in connection with this request for an opinion, and we should appreciate the return of these instruments after you have finished with them."

We understand from additional communications with you, that the corporation referred to in your inquiry is a private corporation operating under a charter or permit in this State for profit.

Subsection (a), Section 2, of Article 600a, V. A. C. S., (The Securities Act) gives the following definition:

"The term 'security' or 'securities' shall include any share, stock, treasury stock, stock certificate under a voting trust agreement, collateral trust certificate, equipment trust certificate, preorganization certificate or receipt, subscription or reorganization certificate, note, bond, debenture, mortgage certificate or other evidence of indebtedness, any form of commercial paper, certificate in or under a profit sharing or participation agreement, certificate or any instrument representing any interest in or under an oil, gas, or mining

lease, fee or title, or any certificate or instrument representing or secured by an interest in any or all of the capital, property, assets, profits or earnings of any company, investment contract, or any other instrument commonly known as a security, whether similar to those herein referred to or not."

It is apparent that the first question raised by your query is whether or not the proposed retirement plan comes within the definition of "security" or "securities". In Vol. 38, Words and Phrases, on pages 470 and 471, the following is said:

"Generally, any form of instrument used for purpose of financing and promoting enterprises, which is designed for investment, is a 'security' within statute authorizing investigations by Attorney General of apparent fraud in sale of securities." General Business Law, paragraph 352, subd. 1.  In re Waldstein, 291 N.Y.S. 697, 160 Misc. 763.

"The term 'security' has no exactly defined legal definition. Generically, the word has reference to written instruments, usually for the payment of money or evidences of a debt, and being more than a mere promise of the debtor of a general liability on his part, but having as collateral to it a pledge of property or some additional obligation. Blackstone speaks of a bill of exchange as a security, which he says was originally invented among merchants in different countries for the more easy remittance of money from one to the other. In calling it a security, probably he had in mind the fact that a bill of exchange may consist of several personal obligations, which makes more certain or secure the primary obligation. By common usage, however, the term has acquired a much broader signification. It is now generally used to refer to instruments for the payment of money, or evidencing title or equity, with or without some collateral obligation, and which are commonly dealt in for the purpose of financing and investment. By modern business methods, those instruments which are used to facilitate dealing in commodities, such as short term notes, bills of lading, bills of exchange and all the other inventions of the commercial

banker, are not referred to as securities, although they may be collaterally secured in some way. Those instruments, however, secured or unsecured, which are used for the purpose of financing enterprises and promoting a distribution of rights in or obligations of such enterprises, and which are designed as a means of investment, are termed securities. Thus, certificates of stock are now regarded as securities, although they but represent a share of the capital stock of a corporation, the interest of the owner in the management of the corporation, and his interest in its surplus assets upon its dissolution. In general, it may be said that any form of instrument used for the purpose of financing and promoting enterprises, and which is designed for investment, is a security according to the modern meaning of that term."

We believe the issuance of said enrollment forms of agreement to participate in the Retirement Plan, constitutes issuance of "securities", as that term is defined in The Securities Act. Surely they are "evidence of indebtedness", inasmuch as the terms of said Plan provide that in no case shall a participant be entitled to less than his deposits plus interest thereon at two per cent per annum compounded annually; this he is assured whether he withdraws his membership voluntarily, dies or forfeits his benefits before maturity of the Plan. In case he participates until maturity, he stands to realize a substantial return on his investment, but this return is by no means certain. The prime purpose of the Plan is to "secure" the participant a return or profit on his investment.

Section 5 of said Article 600a provides, in part, as follows:

"No dealer, agent or salesman shall sell or offer for sale any securities issued after the passage of this Act, except those which come within the classes enumerated in Subdivisions (a) to (q), both inclusive, of Section 3 of this Act, or Subdivisions (a) to (i), both inclusive of Section 23 of this Act, until the issuer of such securities shall have been granted a permit by the Secretary

of State, and no such permit shall be granted
by the Secretary of State until the issuer of
such securities shall have filed with the
Secretary of State a sworn statement verified
under the oath of an executive officer of the
issuer and attested by the Secretary thereof,
setting forth the following information: . . ."

Section 3 of said Article 600a, provides as follows:

"Exempt transactions.  Except as hereinafter in
this Act specifically provided, the provisions of
this Act shall not apply to the sale of any security
when made in any of the following transactions and
under any of the following conditions, and the
company or person engaged therein shall not be deemed
a dealer within the meaning of this Act; that is to
say, the provisions of this Act shall not apply to
any sale, offer for sale, solicitation, subscrip-
tion, dealing in or delivery of any security under
any of the following transactions or conditions:

"(a) At any judicial, executor's, administrator's,
guardian's or conservator's sale, or any sale by a re-
ceiver or trustee in insolvency or bankruptcy.

"(b) The sale by or for the account of a pledge
holder or mortgagee, selling or offering for sale or
delivery in the ordinary course of business, to
liquidate a bona fide debt, of a security pledged in
good faith as security for such debt.

"(c) Sales of securities made by, or in behalf
of a vendor in the ordinary course of bona fide
personal investment of his personal holdings, or
change of such investment, if such vendor is not
otherwise engaged either permanently or temporarily
in selling securities, provided, that in no event
shall such sales or offerings be exempt from the
provisions of this Act when made or intended, either
directly or indirectly, for the benefit of any com-
pany or corporation within the purview of this Act.

"(d) The distribution by a corporation of
securities direct to its stockholders as a stock
dividend or other distribution paid out of earnings
or surplus.

"(e) The sale of an increase of capital stock of a corporation only to its stockholders and without payment of any commission or expense to any officer, employee, broker or agents, and without incurring any liability for any expenses whatsoever in connection with such distribution.

"(f) The issue in good faith of securities by a company to its security holders, or creditors, in the process of a bona fide reorganization of the company made in good faith, or the issue in good faith of securities by a company, organized solely for the purpose of taking over the assets and continuing the business of a predecessor company, to the security holders or creditors of such predecessor company, provided that in either such case such securities are issued in exchange for the securities of such holders or claim of such creditors, or both, and in either such case such security holders or creditors do not pay or give or promise and are not obligated to pay or give any consideration for the securities so issued other than the securities of or claims against said company or its predecessor then held or owned by them.

"(g) The transfer or exchange by, or on account of, one corporation to another or to its stockholders of their or its own securities in connection with a proposed consolidation or merger of such corporation, or in connection with the change of par value stock to non-par value stock or vice versa, or the exchange of outstanding shares for a greater or smaller number of shares, provided that in such case such stockholders do not pay or give or promise and are not obligated to pay or give any consideration for the securities so transferred or exchanged other than the securities of said corporation then held by them.

"(h) The sale by a domestic corporation of its stock forfeited for a delinquent assessment, according to law.

"(i) The sale to any bank, trust company, loan and brokerage corporation, building and loan association insurance company, surety or guaranty company, savings institution or to any registered dealer, provided such dealer is actually engaged in buying and selling securities.

"(j) The sale by any domestic corporation of its stock or other securities issued in good faith and not for the purpose of avoiding the provisions of this Act, so long as the total number of stockholders and security holders of said corporation does not and will not after such sale exceed twenty-five (25) and the securities are issued and disposed of without the use of advertisements, circulars, agents, salesmen, solicitors, or any form of public solicitation.

"(k) The sale of an interest in any partnership, pool, or other company, not a corporation, the total membership of which does not and will not after such sale exceed ten (10), and the organization expenses of which do not or will not exceed two (2) per cent of the total invested capital of such company.

"(l) Subscriptions to capital stock necessary to qualify for incorporation when subscribed by not more than fifteen (15) incorporators in a proposed Texas corporation.

"(m) Wherein the securities disposed of consist exclusively of notes or bonds secured by mortgage or vendor's lien upon real estate or tangible personal property, and the entire mortgage is sold or transferred with all of the notes or bonds secured thereby in a single transaction.

"(n) Any security or membership issued by a corporation organized exclusively for educational, benevolent, fraternal, charitable, or reformatory purposes and not for pecuniary profit, and no part of the net earnings of which inures to the benefit of any stockholder, shareholder, or individual member, and where no commission or remuneration is paid or given or is to be paid or given in connection with the disposition thereof.

"(o) The sale by the issuer, itself, of any securities that are issued by a State or National Bank, by a trust company, or building and loan association organized and operating under the laws of the State of Texas and subject to the supervision of the Commissioner of Banking of the State of Texas, or Federal Loan and Savings Association,

or a company subject to the supervision of the
Banking Commissioner under Senate Bill No. 165,
Forty-second Legislature.  Provided, however,
that all salesmen acting for any bank, trust
company, or company subject to the supervision
of the Banking Commissioner under Senate Bill
No. 165, Forty-second Legislature, in the sale
of such securities within this State, shall be
licensed as provided in this Act.

"(p) The sale, by the issuer itself, of any
securities that are issued by the United States,
any political subdivision or agency thereof, any
territory or insular possession of the United
States, the State of Texas, any State of the
United States, the District of Columbia, or by
any county, city, municipal corporation, district
or political subdivision of the State of Texas or
any authorized agency of the State of Texas.

"(q) The sale and issuance of any securities
issued by any farmers' cooperative association
organized under Chapter 8 of Title 93, Articles
5737-5764, inclusive, Revised Civil Statutes of
Texas as amended; and the sale of any securities
issued by any farmers' cooperative society organ-
ized under Chapter 5 of Title 46, Articles 2514-
2524, inclusive, Revised Civil Statutes of Texas.
Provided, however, this exemption shall not be
applicable to agents and salesmen of any farmers'
cooperative association of farmers' cooperative
society when the sale of such securities is made
to non-members, or when the sale of such securities
is made either to members or non-members and a
commission is paid or contracted to be paid to the
said agent or salesmen."

Section 23 of said Article 600a, provides as follows:

"Except with reference to exempt transactions
profided for in Section 3 of this Act, it shall be
unlawful for any dealer, agent or salesman to sell
any securities or to issue or publish within this
State any circular, advertisement, pamphlet, pros-
pectus, program, or other matter in connection there-
with, concerning any security or securities which
such dealer handles or proposes to sell until such

dealer shall have been registered or temporary permission obtained as in this Act provided; provided however, that any such circular, advertisement, pamphlet, prospectus, program, or other matter in connectinn therewith may include the names of non-registered dealers who have participated with registered dealers in the original purchase or underwriting of such securities without being deemed to be in violation of this Act, but if the names of non-registered dealers are included thereon, then such circular, advertisement, pamphlet, program or other matter in connection therewith shall bear a legend thereon in plain and legible type, stating that such securities are being offered within the State of Texas only by such persons whose names are subscribed thereon as are registered dealers within the State of Texas.  Unless the same has reference to an exempt transaction provided for in Section 3 of this Act, or refers to any of the securities hereinafter expressly exempted from this provision, it shall be unlawful for any dealer, agent or salesman to issue or publish within this State any circular, advertisement, pamphlet, prospectus, or other matter in connection therewith concerning any security or securities to be sold or offered for sale in this State unless the name of the dealer is subscribed thereto or printed thereon and unless a true copy of such circular, advertisement, pamphlet, prospectus or program, or other matter in connection therewith has first been filed in the office of the Secretary of State by the person or company about to issue or publish the same or has been deposited in a United States Post Office, properly enclosed in an envelope addressed to the Secretary of State at Austin, Texas, with the postage duly prepaid thereof; provided, however, that in the case of an advertisement to be published in a newspaper or other periodical, a copy of such advertisement taken from said publication may be mailed to the Secretary of State within twenty-four (24) hours after the first publication thereof; provided, further, that when offered for sale, or sold, or dealt in by a registered salesman of a registered dealer, this provision shall have no application to any security included within any of the following classes:

"(a) Any security issued or guaranteed by the United States or by any territory or insular possession thereof, or by the District of Columbia, or by any State or municipal corporation or political subdivision or agency thereof having the power of taxation or assessment.

"(b) Any security issued or guaranteed by any foreign government with which the United States is at the time of the sale, or offer of sale thereof, maintaining diplomatic relations, or by any State, province or political subdivision thereof having the power of taxation or assessment, which security is recognized at the time it is offered for sale in this State as a valid obligation by such foreign government or by such State, province, or political subdivision thereof issuing the same, provided, however, that such securities must be on the list approved by the Securities and Exchange Commission of the United States.

"(c) Any security issued by and representing an interest in or a direct obligation of a national bank, or of a governmental agency created or existing by an Act of Congress of the United States other than corporations created or existing under the Code of Laws for the District of Columbia or under the Code of Laws for any territory or possession of the United States.

"(d) Any security issued or guaranteed either as to principal, interest, or dividend, by a corporation owning or operating a railroad or any other public service utility; provided, that such corporation is subject to regulation or supervision either as to its rates and charges or as to the issue of its own securities by the Railroad Commission of Texas, or by a public commission, board of officers, having like powers, of the Government of the United States, or of any State, Territory, or insular possession thereof, or of the District of Columbia, or of the Dominion of Canada, or any province thereof; also equipment trust certificates or equipment notes or bonds based on chattel mortgages, leases or agreements for conditional sale of cars, motive power or other rolling stock mortgages, leased or sold to or furnished for the use of or upon a railroad or other public service utility corporation, provided that such corporation is subject to regulation or super-

vision as above; or equipment trust certificates, or equipment notes or bonds where the ownership or title of such equipment is pledged or retained in accordance with the provisions of the laws of the United States, or of any State, Territory or insular possession thereof, or of the District of Columbia, or the Dominion of Canada, or any province thereof, to secure the payment of such equipment trust certificates, bonds or notes.

"(e) Any security issued and sold by a domestic corporation without capital stock and not organized and not engaged in business for profit.

"(f) Securities which at the time of sale have been fully listed upon the New York Stock Exchange, the Chicago Stock Exchange, the Boston Stock Exchange, or upon any other recognized and responsible stock exchange which has been previously approved by the Secretary of State as hereinafter in this Section provided, and also all securities senior to, or if of the same issues, upon a parity with any securities so listed or represented by subscription rights which have been so listed, or evidence of indebtedness guaranteed by any company any stock of which is so listed, such securities to be exempt only so long as such listing shall remain in effect and only so long as the exchange upon which such securities are so listed remains approved under the provisions of this Section, application for approval by the Secretary of State may be made by any organized stock exchange in such manner and upon such forms as may be prescribed by the Secretary of State, but no approval of any such exchange shall be given unless the facts and data supplied with the application shall be found to establish:

"(1) That the requirements for the listing of securities upon the exchange so seeking approval are such as to effect substantially the reasonable protection to the public now existing in the case of exchanges herein approved.

"(2) That the governing constitution, by-laws, and/or regulations of such exchanges shall require:

"1st: An adequate examination into the affairs of the issuer of the securities which are to be listed before permitting trading therein.

"2nd: That the issuer of such securities, so long as they be listed, shall periodically prepare, make public and furnish promptly to the exchange, appropriate financial, income and profit and loss statements.

"3rd: Securities listed and traded in on such exchange to be restricted to those of ascertained, sound asset and/or income value.

"4th: A reasonable surveillance of its members, including a requirement for periodical financial statements and a determination of the financial responsibility of its members and the right and obligation in the governing body of such exchange to suspend and/or expel any member found to be financially embarrassed or irresponsible or found to have been guilty of misconduct in his business dealings, or conduct prejudicial to the rights or interests of his customers.

"The approval of any such exchange by the Secretary of State shall be made only after a reasonable hearing and investigation, and shall be by an order of approval upon a finding of fact substantially in accordance with the requirements hereinabove provided. The Secretary of State, upon ten (10) days' notice and hearing, shall have power at any time to withdraw approval theretofore granted by him to any such stock exchange, and thereupon securities so listed upon such exchange shall be no longer entitled to the benefit of such exemption except upon the further order of said Secretary of State again approving such exchange.

"(g) Any security issued or guaranteed by and/or representing an interest in or a direct obligation of a state bank or trust company incorporated under the laws of and subject to the examination, supervision and control of any state or territory of the United

States or any insular possession thereof; or issued or guaranteed by any building and loan association or savings institution or by any insurance company under the supervision or control of the Banking or Insurance Department of this State.

"(h) Negotiable promissory notes or commercial paper issued in good faith and in the usual course of carrying on and conducting the business of the issuer, provided that such notes or commercial paper mature in not more than twelve (12) months from the date of issue.

"(1) Notes, bonds, or other evidence of indebtedness or certificates of ownership which are equally and proportionately secured without reference or priority of one over another, and which, by the terms of the instrument creating the lien, shall continue to be so secured by the deposit with a trustee of recognized responsibility approved by the Secretary of State of any of the securities specified in subsections (a) and (b), or of any of the securities, other than stock, specified in subsection (d) of this Section 23, such deposited securities, if of the classes described in subsections (a) and (b) hereof, having an aggregate par value of not less than one hundred and ten (110) percent of the par value of the securities thereby secured, and if of the class specified in subsection (d) hereof, having an aggregate par value of not less than one hundred and twenty-five (125) per cent of the par value of the securities thereby secured."

We have carefully examined the statutory exemptions above set out and are unable to find therein authority for exempting the issuer of the securities incident to the proposed Retirement Plan from the requirements of Section 5 of Article 600a, supra, other than that expressed in subsection (j) of said Section 3 of Art. 600a, wherein domestic corporations are allowed to sell their stock or other securities issued in good faith and not for the purpose of avoiding the provisions of the Securities Act, so long as the total number of stockholders and security holders of said corporation does not and will not after such sale exceed twenty-five (25) and the securities are issued and disposed of without the use of advertisements circulars, agents, salesmen, solicitors, or any form of public solicitation. This is the only one of the statutory exemptions that might apply to the Retirement Plan in question.

        Trusting the foregoing fully answers your inquiry, we herewith return the instruments submitted by you.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By     /s/ Robert L. Lattimore, Jr.
           Robert L. Lattimore, Jr.
                   Assistant

RLL:rt:mjs
Attach.

APPROVED FEB. 19, 1945
/s/ Carlos Ashley
FIRST ASSISTANT
ATTORNEY GENERAL

APPROVED OPINION COMMITTEE
BY /s/ JAE CHAIRMAN